**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **JOSEPH TRIGLETH** | * | **CIVIL ACTION** |
| **Plaintiff** | * | **NO. 2:23-cv-00065** |
| **VERSUS** | * | **SECTION M, DIVISION 4** |
| **OCEAN BELT MARITIME, INC. and OCEAN LONGEVITY SHIPPING & MANAGEMENT CO., LTD.** | * | **JUDGE BARRY W. ASHE** |
| | * | **MAGISTRATE JUDGE KAREN WELLS ROBY** |
| **Defendants** | * | |

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO STRIKE & EXCLUDE PLAINTIFF'S PROFFERED "MARINE EXPERT" EVIDENCE UNDER RULE 702 AND/OR *DAUBERT/KUMHO* PRINCIPLES**

Defendants Ocean Belt Maritime, Inc. and Ocean Longevity Shipping & Management Co., Ltd. ("Defendants") submit this Memorandum in Support of their Motion pursuant to Rule 702 of the Federal Rules of Evidence, and the principles set forth in the Supreme Court's *Daubert/Kumho* decisions and their progeny (or alternatively Rule 403), to exclude the report and any trial testimony of Plaintiff's proffered "Marine Expert" (*see* Rec. Doc. 33), Capt. Ronald L. Campana.

Defendants are not challenging Campana's qualifications. Rather, his testimony/opinions, as reflected in and ***necessarily limited to*** the content of his report (Exhibit 1) (as recently confirmed by this Court),[1] are inadmissible under Rule 702/*Daubert/Kumho* for four primary reasons:

1. **WRONG/SPECULATIVE FACTS**- Campana's proffered testimony/opinions/report are unreliable and unhelpful because he relies on objectively wrong facts and admittedly speculative assumptions unsupported by any evidence, which are fundamentally unhelpful/unreliable under Rule 702.[2] They must be excluded pursuant to this Court's "important gatekeeping role [of] verifying that expert testimony meets this threshold standard of reliability before the jury hears it."[3] As this Court has recognized, under entrenched Fifth Circuit law, "expert evidence based on a fictitious set of facts is just as unreliable as evidence based upon no research at all" and thus "expert testimony that relies

---

[1] Campana "cannot testify about [any issues that] he does not discuss … in his report." *Sanders v. Weeks Marine, Inc.*, 2024 WL 4346515, at *6 (E.D. La. Sept. 30, 2024) (Ashe, J.).

[2] Fed. R. Evid. 702(b) (requiring that an expert's opinions/testimony be "based on sufficient facts or data").

[3] *Schindler v. Dravo Basic Materials Co., Inc.*, 790 F. App'x 621, 624 (5th Cir. 2019).

on completely unsubstantiated factual assertions is inadmissible."[4] "[E]xpert testimony must be…more than unsupported speculation or subjective belief" to be admissible.[5]

2. **<u>INAPPLICABLE REGULATORY STANDARD</u>** - Campana references inapplicable international regulatory standards, again making his report/testimony unreliable and unhelpful, and also misleading to the jury and prejudicial.

3. **<u>COMMON-SENSE ISSUES</u>** - This case involve a straightforward, non-technical alleged incident: Plaintiff claims a 3-4' tall dolly with pipes on it was placed by some unknown person near a short step/platform on the deck of the M/V OCEAN BELT (**which Campana *has never been aboard***), and that he slipped/tripped on a pipe extending from the dolly onto the step as he stepped onto the stair. Campana's report/testimony "offer nothing beyond common-sense conclusions regarding this rather basic personal injury case" and "[i]t does not appear that expertise of any kind was required or used to render" any purported "expert opinions."[6] They must be excluded under Fifth Circuit law (consistently applied by this Court[7]) that expert testimony cannot be admitted when "the jury could adeptly assess [the] situation using only their common experience and knowledge."[8]

4. **<u>NO METHODOLOGY</u>** - Campana has not applied any discernible methodology in his purported opinions. "An expert may not simply restate certain evidence and then offer an expert opinion without any insight into [his] own analysis or bases for his opinion."[9]

Campana has been excluded on multiple occasions in this District for essentially identical reasons.[10] Defendants seek the same result here.

---

[4] *Thibodeaux v. Gulf Coast Tugs, Inc.,* 668 F. Supp. 3d 486, 493 (E.D. La. 2023) (Ashe, J.) (quoting *Guillory v. Domtar Indus. Inc*., 95 F.3d 1320, 1331 (5th Cir. 1996) & *Moore v. Int'l Paint, L.L.C*., 547 F. App'x 513, 515 (5th Cir. 2013)).

[5] *Whalen v. Monsanto Co*., 2024 WL 4524170, at *6 (5th Cir. Oct. 18, 2024). *See also Source Prod. & Equip. Co. v. Schehr*, 2019 WL 4752058, at *11 (E.D. La. Sept. 30, 2019) (Ashe, J.) ("[T]he factual predicate of an expert's opinion must find some support in the record, and ... mere 'theoretical speculations' lacking a basis in the record will not create a genuine issue of fact. ... [W]here an expert's opinion is predicated on factual assumptions, those assumptions must also find some support in the record.").

[6] *Jumonville v. Progressive Sec. Ins. Co*., 2024 WL 3044653, *2 (E.D. La. June 18, 2024) (Milazzo, J.) (excluding report/testimony of Campana as a proffered "marine safety expert").

[7] *See Gulf Coast Tugs, Inc*., 668 F. Supp. 3d at 492 ("An expert's testimony is not relevant and may be excluded if it is directed to an issue that is well within the common sense understanding of jurors and requires no expert testimony.").

[8] *Peters v. Five Star Marine Service*, 898 F.2d 448, 450 (5th Cir.1990). Defendants have proffered their own marine surveyor/operations expert FMC International LLC ("FMC"), who actually *attended in person on the OCEAN BELT vessel*, to take measurements and photographs/imagery of the alleged conditions asserted in Plaintiff's claims (which, notably, Campana purports to rely on *because he never actually boarded the vessel*). Unlike Campana, FMC's testimony/opinions are directly reliable, helpful, and relevant in providing specific measurements and contextual analysis of the alleged conditions/operations at issue. *See* Ex. 2, FMC Report.

[9] *Shawler v. Ergon Asphalt & Emulsions, Inc*., 2016 WL 1019121, at *12 (E.D. La. Mar. 15, 2016), *aff'd sub nom. Shawler v. Big Valley, L.L.C.*, 728 F. App'x 391 (5th Cir. 2018) (citing *RSUI Indem. Co. v. Am. States Ins. Co*., , 2015 WL 2372313, *6 (E.D. La. May 18, 2015) (Africk, J.)).

[10] *See, e.g.*, *Badeaux v. Eymard Bros. Towing Co., Inc*., 2021 WL 4860300, *6 (E.D. La. Oct. 19, 2021) (Vance, J.) ("Finding no admissible opinions to be offered by Campana, the Court orders that Campana may not testify at trial in

# I. FACTUAL BACKGROUND

## A. Underlying Alleged Incident[11]

Plaintiff claims he slipped/tripped aboard the M/V OCEAN BELT while attempting to traverse a step/platform (allowing access over piping on the vessel's deck, as shown below), during his work as a stevedore supervisor for non-party Cooper Consolidated, LLC monitoring and taking photographs/videos of discharge operations for large bulk cargo bags from the vessel's Hold no. 5 via a crane barge adjacent to the vessel:



He claims an unknown person placed a 3-4' tall dolly with pipes/stanchions on it adjacent to the step/platform (i.e in the space to the right of the step in the above photo) such that a pipe extended over the step; and that he stepped on that pipe while mounting the step, causing him to slip/trip.[12]

---

this matter."); *Jumonville v. Progressive Sec. Ins. Co.,* 2024 WL 3044653, *2 (E.D. La. June 18, 2024) (Milazzo, J.) ("[Campana's opinions] are deficient [because they] appear to regurgitate the version of facts promulgated by the party who obtained [his] services and then reach conclusory legal opinions based on those facts. It does not appear that expertise of any kind was required or used to render these opinions. Further, expert testimony should be disallowed where the trier of fact can 'adeptly assess this situation using only their common experience and knowledge.' … [His opinions] offer nothing beyond common-sense conclusions regarding this rather basic personal injury case.").

[11] *See also* Defendants' contemporaneously filed Motion for Summary Judgment and Statement of Uncontested Facts.

[12] Ex. 4, p. 207 (ll. 6-25) through 221; p. 225 (ll. 5-14, 3-4' height); Rec. Doc. 20, ¶5.

He had crossed the step/platform multiple times in the prior 2.5 hours of his shift while walking back and forth from the area of the holds to the vessel's port rail photographing the cargo coming out of the hold and "swinging" via crane down into the barge on the port side, and had not seen the dolly/pipes; nor did he see who allegedly placed the dolly/pipes next to the step/platform.[13] The alleged incident was unwitnessed.[14] Plaintiff continued to work for roughly 30-45 minutes afterwards, but took no photos of the allegedly obstructing dolly/pipes.[15]

### B. Schematic Summary of Campana's Report

Campana's report (Exhibit 1) is nine pages long, but the first two pages are merely a table of contents and summary of materials reviewed; and the last page is a signature page. Thus, the report includes only six pages of any substantive content. Of the six substantive pages, one is a generic purported summary of facts (p.3); the next is a generic summary of Campana's credentials/ purported "methodology" (p. 4), vaguely referencing unspecified "pertinent International and US Laws" and unidentified "consultation with appropriate publications and governmental agencies" as the basis for his alleged "methodology"; and the next is merely a copy/paste of Plaintiff's deposition excerpts (p.5). Thus, **only three pages** (6-8) **contain any substance, and only two** (7-8) **include proffered opinions**, interspersed with further generic summary/non-opinion statements. The below summarizes the report (with the only purported "opinions" highlighted):

| | |
|---|---|
| p. 1 | Table of Contents |
| p. 2 | Summary of Materials Reviewed; Item 17 Deficient |
| p. 3 | "BACKGROUND INFORMATION" Fact summary |
| p. 4 | "Methodology" - ¶1 one-sentence fact summary; ¶2 summary of credentials/ experience; **confirms non-attendance on vessel**; ¶3 summary of reliance on knowledge/ experience |

[13] *See* Ex. 4, p. 221 (ll. 13-18, did not see dolly/pipes during shift); p. 208 (ll. 10-11, did not see who positioned dolly/pipes); p. 175 (ll. 2-6) & 213 (ll. 19-21) (did not see vessel crew).

[14] *See* Ex. 7, Supervisor's Investigation Report of Employee Accident/Illness. Plaintiff testified he filled this form out himself. *See* Ex. 4, pp. 78 (ll. 19-25) through 79 (ll. 1-5).

[15] *See* Ex. 4, p. 155 (ll. 12-16, 30-45 minutes); p. 218 (no photos after alleged incident).

| | |
|---|---|
| p. 5 | Point 1 - entire page of deposition excerpts |
| p. 6 | • Point 1 (cont'd) deposition excerpt<br>• Point 2 – summary statement regarding Plaintiff's admission that he had crossed the steps at issue multiple times earlier during his shift<br>• Point 3 – additional deposition excerpt and speculation as to placement of dolly<br>• Point 4 – general/non-specific summary of ISM Code history/purpose<br>• Point 5 – summary of general safety provisions of ISM Code §1.2.2 |
| P. 7 | • Point 6 – additional general summary of objectives of ISM Code<br>• Point 7 – purported opinion regarding crew training<br>• Point 8 – admission that Campana did not review Defendants' SMS/reports<br>• Point 9 – summary of photos/measurements *incorrectly* describing photos depicting dolly alignment and including *incorrect* pipe-length measurement<br>• Point 10 – statement speculating as to nighttime operating conditions |
| p. 8 | Summary "CONCLUSIONS AND OPINIONS"<br>• Bullet 1 - Summary description of vessel<br>• Bullet 2 – purported opinion regarding vessel crew training<br>• Bullet 3 – purported opinion regarding safety protocols<br>• Bullet 4 – summary of Plaintiff's version of the alleged incident, with purported summary opinion regarding crew training<br>• Bullet 5 – statement of non-reviewed materials<br>• Bullet 6 – incorporation statement |
| p. 9 | Signature/Procedural statement |

## II. LAW AND ARGUMENT

### A. Rule 702 and *Daubert/Kumho* Standards

This Court has recently set forth the applicable standards for exclusion of a purported expert pursuant to Rule 702/*Daubert*/*Kumho* principles:

> In *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 589…(1993), the Supreme Court held that Rule 702 requires a district court to act as a gatekeeper to ensure that "any and all scientific testimony or evidence admitted is not only relevant, but reliable." Rule 702 of the Federal Rules of Evidence provides:
>
> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts ...

> The reliability inquiry requires a court to assess whether the reasoning or methodology underlying the expert's testimony is valid. In *Daubert*, the Supreme Court listed several non-exclusive factors for a court to consider in assessing reliability: (1) whether the theory has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error; and (4) the general acceptance of the methodology in the scientific community. However, a court's evaluation of the reliability of expert testimony is flexible because "[t]he factors identified in *Daubert* may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 …(1999) (quotations omitted). In sum, the district court must ensure that an expert, whether basing testimony upon professional studies or personal experiences, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field. The party offering the testimony must establish its reliability by a preponderance of the evidence. *See Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998).[16]

"Where an expert's opinion is based on insufficient information, the analysis is unreliable[;] [s]ufficient information [must be] based on facts in the record rather than altered facts and speculation."[17] As the Fifth Circuit has repeatedly held (and as this Court has confirmed[18]), an expert relying on *demonstrably wrong facts* cannot be reliable under Rule 702/*Daubert*/ *Kumho*:

> The *Daubert* reliability analysis applies to, among other things, the facts underlying the expert's opinion. In particular, an opinion based on insufficient, erroneous information, fails the reliability standard. *Paz v. Brush Engineered Materials, Inc.*, 555 F.3d 383, 389 (5th Cir. 2009) (affirming exclusion of expert opinion that relied on false assumptions rebutted by undisputed record evidence). Although the *Daubert* reliability analysis is flexible and the proponent of the expert evidence need not satisfy every one of its factors, **the existence of sufficient facts ... is in all instances mandatory**. Of course, [w]hen facts are in dispute, experts sometimes reach different conclusions based on competing versions of the facts. Generally, the fact-finder is entitled to hear [an expert's] testimony and decide whether ... the predicate facts on which [the expert] relied are accurate. **At the same time, however, expert testimony that relies on completely unsubstantiated factual assertions is inadmissible. When an expert's testimony is not based upon the**

[16] *Gulf Coast Tugs, Inc.*, 668 F. Supp. 3d at 492.

[17] *Alexander v. Intracoastal Tug & Barge Co., L.L.C.*, 2025 WL 306359, *5 (E.D. La. Jan. 27, 2025) (Africk, J.) (quoting *Paz v. Brush Eng'rd Materials, Inc.*, 555 F.3d 383, 388 (5th Cir. 2009) & *Domtar Indus.*, 95 F.3d at 1331).

[18] *See also Gulf Coast Tugs, Inc.*, 668 F. Supp. 3d at 493.

> **facts in the record but on altered facts and speculation designed to bolster [a party's] position, the trial court should exclude it.**[19]

In other words, expert testimony must be excluded when "the universe of facts assumed by the expert differs frequently and substantially from the undisputed record evidence."[20] "[A]n opinion based totally on incorrect facts will not speak to the case…and hence will be irrelevant [and] will not advance the express goal of 'assisting the trier of fact' under rule 702."[21]

### B. Rule 403 Alternative Basis to Exclude Expert Testimony

Even if admissible under Rule 702 and *Daubert/Kumho*, an expert's testimony/opinions must be excluded when their prejudicial effect outweighs any arguable relevance:

> [A] judge assessing a proffer of expert scientific testimony under Rule 702 should also be mindful of other applicable rules. In particular, a court should consider the applicability of Federal Rule of Evidence 403, which permits a court to "exclude relevant evidence if its probative value is substantially outweighed by a danger of" among other things, "confusing the issues" or "misleading the jury." Fed. R. Evid. 403. Because "[e]xpert evidence can be... quite misleading," a court under Rule 403 should "exercise[ ] more control over experts than over lay witnesses." *Daubert*, 509 U.S. at 595… (quoting Jack B. Weinstein, Rule 702 of the Federal Rules of Evidence Is Sound; It Should Not Be Amended, 138 F.R.D. 631, 632 (1991)).[22]

"'Unfair prejudice'...means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one."[23] In this regard, "[e]xpert evidence can be both powerful and quite misleading because of the difficulty in evaluating it."[24]

Thus, "because of an expert's stature *qua* expert, jurors may assign more weight to expert testimony than it deserves," and expert testimony can carry with it an "unwarranted aura of special

---

[19] *Moore,* 547 F. App'x at 515. *Accord Jacked Up, L.L.C. v. Sara Lee Corp.*, 807 F. App'x 344, 348 (5th Cir. 2020) (quoting *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987)).

[20] *Moore,* 547 F. App'x at 516.

[21] *Domtar Indus.*, 95 F.3d at 1331.

[22] *Douglas v. Chem Carriers Towing, LLC*, 431 F. Supp. 3d 830, 835 (E.D. La. 2019) (Vance, J.).

[23] Fed. R. Evid. 403, Advisory Committee Notes; *Addison v. Louisiana Reg'l Landfill Co.*, 2024 WL 3606808, *5 (E.D. La. July 31, 2024) (Morgan, J.).

[24] *Daubert*, 509 U.S. at 595.

reliability and trustworthiness,"[25] presenting "a risk that the jury may give the testimony undue consideration simply because it comes from an expert."[26] In particular, "[e]xpert opinion evidence may be excluded if it confuses the issue and risks unfair prejudice by, for instance, merely telling the jury what results to reach," because if an expert merely "share conclusions of law with little or no basis in fact[, it would] ris[k] allowing [an expert] to put his imprimatur on Plaintiff's case."[27]

Also, "[i]f an opinion is fundamentally unsupported…it offers no expert assistance to the jury…[and] may render it more prejudicial than probative [and] inadmissible under" Rule 403.[28]

### C. Application

Under either the Rule 702/*Daubert/Kumho* standard, or the Rule 403 balancing analysis, Campana's report/opinions are unreliable, unhelpful, and inadmissible and must be excluded.

#### 1. Campana's Report/Opinions must be Excluded because they Derive from a Series of Objectively, Undisputedly Wrong Facts and/or Rank Speculations

First, and perhaps most simply, Campana's report/opinions are based on multiple "completely unsubstantiated factual assertions…rebutted by undisputed record evidence";[29] and/or abject speculation, which (as this Court has held) cannot be the "factual predicate of an expert's opinion [without] some support in the record" because an expert's opinions cannot be based on "mere theoretical speculations lacking a basis in the record."[30] These abjectly wrong

[25] *U.S. v. Naidoo*, 995 F.3d 367, 375 (5th Cir. 2021) (quoting *U.S. v. Pires*, 642 F.3d 1, 12 (1st Cir. 2011)).

[26] *U.S. v. Rider*, 2022 WL 2813719, at *2 (E.D. Tex. July 18, 2022), *aff'd*, 94 F.4th 445 (5th Cir. 2024).

[27] *Haughey v. Am. Wall Bed Co., Inc.*, 2024 WL 1092839, at *14 (E.D. La. Mar. 13, 2024) (Long, J.).

[28] *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987).

[29] *Moore,* 547 F. App'x at 515. Importantly, Campana's errors are NOT merely a scenario where "facts are in dispute, [which would allow for] … different [experts to reach their own] conclusions based on competing versions of the facts." *Moore*, 547 F. App'x at 515 (citing Rule 702 advisory committee's note). Campana's errors noted in this §II.C.1 are incorrect based on *Plaintiff's own* testimony and/or otherwise undisputed facts based on record evidence.

[30] *Schehr*, 2019 WL 4752058 at *11.

factual assumptions render Campana's conclusions unreliable and patently misleading and unhelpful.

**(1)** Campana states that "there are no lights between the cargo holds on a bulk carrier" (Ex. 1, p. 3) and that "the area where the crossover is [i.e. the area of the alleged incident] would be in a non-lighted area" (p. 7). **The first statement is demonstrably wrong.** There are lights between cargo Holds 5 and 6 on the vessel, as shown in the below photos (zoomed out/in, circled in blue) from the parties' joint survey (which Campana did not attend):






[31]

[31] *See* Ex. 2, FMC Report, pp. 4-5; Ex. 3.

Regarding the second statement, Plaintiff squarely confirmed in his testimony that **there was no issue whatsoever with lighting** on the night of the alleged incident:

> Q. Was the lighting adequate that night for what you were doing on the ship?
>
> A. I would say it was adequate light…
>
> Q. Did you ever have issues, when you were making your rounds, walking between and or walking up to check the lines, if you did not have adequate lighting to do that?
>
> A. If they don't have adequate lighting and I am taking photos, I use the light on my phone.
>
> Q. Did you have any issues walking around the vessel because it wasn't well-lit that night?
>
> A. No.[32]

Thus, in addition to being wrong about the lack of lights in the area between Holds 5 and 6, Campana's commentary on lighting is also inherently speculative, irrelevant and unhelpful because Plaintiff's own testimony denies any issues with inadequate/problematic lighting.

**(2)** Campana suggests that "[o]nly the ship's crew could have moved the dolly and pipes/ stanchions to the location" where Plaintiff claims the incident occurred (Ex. 1, p.6); that "someone instructed a crewmember to place the dolly just forward of the step/platform between holds 5 and 6" (p. 8); and that "[w]hoever in the crew transported the dolly" acted inappropriately (p.8). **This is all pure speculation** as Campana's own words indicate.[33] Plaintiff testified he *did not see* who put the dolly/pipes in the alleged location near the step:

> Q. Was there good housekeeping the night of the incident?
>
> A. My walk path was clear.
>
> ***
>
> Q. You had traversed those steps multiple times earlier in the night, correct?
>
> A. Correct.
>
> Q. Was the dolly there earlier in the night?
>
> A. Not that I had seen.
>
> Q. Did you see who put it there?

[32] Ex. 4, p. 188.

[33] Indeed, the very language Campana uses – "only the ship's crew *could have* moved…"; "*someone* instructed"; "*whoever* in the crew transported…" – is all phrased in purely speculative terms.

> A. It would have been the ship's crew –
>
> Q. **Did you see who put it there**?
>
> A. **I did not.**[34]

Plaintiff does not know – nor is there any other record evidence to indicate – how, when or by whom/what means the dolly/pipes ended up in the area of the alleged incident. Also, **there were no other witnesses to the alleged incident** other than Plaintiff.[35] Further, Plaintiff affirmatively testified that he did not see any vessel crew in the area of the alleged incident during the prior approximately 2.5 hours he was engaged in cargo operations:

> Q. In that 2 and a half hours when y'all were actively discharging cargo, did you see any vessel crew in that area where you were in that 2 and a half hours?
>
> A. **I did not, not that I can recall**.
>
> ***
>
> Q. … you don't recall seeing any crew in that area earlier in the night?
>
> A. **I do not recall seeing any crew.** [36]

Further, Plaintiff testified that the vessel crew "are [not] involved at all in cargo operations while they are ongoing with the Cooper personnel."[37] Thus, Plaintiff **admittedly *does not***

---

[34] Ex. 4, p. 188 (ll. 22-24); 208 (ll. 2-11).

[35] Further, only Plaintiff and/or one of his stevedore crew colleagues would have requested installation of the stanchions/safety rail pipes, but the "flagman" Plaintiff was working with on the night of the alleged incident did not ever work on top of open holds:

> A. On top of the ship, the hold covers open, and flaggers, like myself when I was flagging, I wanted to stand up there and see the cargo better, where a lot of flaggers get under the cover because they are short and they can see down. They put these across the front with a cable so we don't walk off into the hold.
>
> Q. Do you recall -- actually, the safety rails would be put in place on an open hold, correct?
>
> A. Correct, if requested by myself or the flagger.
>
> Q. Did you request those?
>
> A. No, Willy doesn't work on top of the hold; he is scared of heights

Ex. 4 at pp. 209-210. Thus, neither Plaintiff nor his colleagues requested stanchions on the night of the alleged incident.

[36] Ex. 4, p. 175 (ll. 2-6); p. 213 (ll. 19-21). Plaintiff's shift began at 7:30 PM/1930 hours (when he arrived on the vessel); but cargo operations in Hold 5 did not commence for his shift until 9:30 PM/2130 hours (due to initial crane downtime for a repair). *See* Ex. 6, Cooper "Flag Report." Thus, by the time of the alleged incident at 11:20PM/2320 hours, Plaintiff had been working in the area of the alleged incident for approximately 2.5 hours, and no crew entered the area between Holds 5 and 6 during that interim.

[37] *Id.* at p. 233, ll. 6-9 ("Q. The vessel crew of the OCEAN BELT, are they involved at all in cargo operations while they are ongoing with the Cooper personnel? A. No…").

***know*** who placed the dolly near the steps; and moreover ***affirmatively testified*** **there were no vessel crew** in the area that could have put it there during the relevant timeframe.

Campana's proposition that "only the ship's crew could have moved the dolly and stanchions" is abject speculation, and cannot be the "factual predicate of an expert's opinion [without] some support in the record" because an expert's opinions cannot be based on "mere theoretical speculations lacking a basis in the record."[38] Moreover, it is directly contrary to Plaintiff's affirmative testimony that there were no vessel crew in the area that could have put the dolly where he says it was. Thus, in addition to being pure speculation, Campana's contention is also a "completely unsubstantiated factual assertion[n]…rebutted by undisputed record evidence"[39] in Plaintiff's clear testimony that no vessel crew were ever in the area.

**(3)** Campana states that "the measurements of the dolly and… stanchions by [FMC] surveyor[s] show the dolly flat surface [i.e. the "bed" of the dolly] to be 31.5 [inches] in length and the … stanchions to be 43 [inches] in length," such that "it is possible the stanchions overhung the dolly by up to 12 [inches]." To begin with, Campana is wrong on the length of the stanchions; they are 40 inches, not 43.[40] Similarly, Campana ignores other measurements indicating that the alleged mechanism of the incident – stanchions/pipes on the step – **was impossible**. Specifically, the lower step of the relevant platform is **11 inches** above the vessel deck, but the bed of the dolly measured at the parties' joint survey (which Campana did not attend) is only **10.6 inches** above the vessel deck.[41] Because the dolly bed is *lower than* the level of the step, it would be impossible for pipes/stanchions on the dolly to extend over the

[38] *Schehr*, 2019 WL 4752058 at *11.

[39] *Moore,* 547 F. App'x at 515.

[40] Ex. 2, FMC Report at p. 15, point (d).

[41] Ex. 2, FMC Report at pp. 7-9.

step. Moreover, the dolly measured at the parties' joint inspection (not attended by Campana) *was a different dolly* than the one on board on the date of the alleged accident, **which had a *lower* bed based on comparison with contemporaneous photos**. Thus, the dolly supposedly involved in the alleged accident would have had *even less than* 10.6 inches of clearance from the deck. Again, the bed of the older incident-involved dolly would have been ***below*** **the level of the step**, such that even if any stanchions were extending over the non-handle edge of the dolly, they would not be high enough to extend over the step.

**(4)** Campana suggests failure of the vessel's crew/"duty officer" to make intermittent rounds to monitor ongoing stevedore cargo operations contributed to the incident (Ex. 1, p. 8). This, **again, is pure speculation**. Plaintiff testified that he did not know and did not recall whether or how often vessel crew were in the area of the alleged incident on the night it occurred:

> Q. Were there any vessel crew in the area where these cargo operations were taking place on the night of the incident?
>
> **A. I couldn't tell you.**
>
> Q. How many times did you see the vessel crew in the time you were working?
>
> A. Maybe once or twice.
>
> Q. What were they doing when you saw them?
>
> A. Walking.
>
> Q. Around the perimeter of the vessel?
>
> A. Walking up to the bow of the ship, whatever, to check on lines. I don't know what they are doing. I had to keep the vessel crew out of the swing path.
>
> Q. Were there times that night when you had to say, hey, get out of the way of the swing path to the vessel crew?
>
> **A. I don't remember.**[42]

Moreover, other contemporaneous record evidence indicates that the vessel crew did make deck rounds for "fire safety and security patrols" at fixed intervals during the evening of the

[42] Ex. 4, p. 172 (ll. 2-20).

incident.[43] Further, Campana acknowledges that he did not review "the SMS of the vessel, or any reports generated by the vessel" (Ex. 1, p. 7), further underscoring that his commentary on any crew duties/conduct on the night of the alleged incident is entirely speculative.

Campana's suggestion that the vessel crew neglected any alleged monitoring duty is based on rank speculation "lacking a basis in the record"[44] – and in fact *contradicted* by contemporaneous evidence - and therefore is unhelpful, unreliable and inadmissible.

**(5)** Campana acknowledges (Ex. 1, p. 8) that Plaintiff "passed over th[e] platform numerous times during his shift on the vessel" - and Plaintiff admitted that he "had traversed those steps multiple times earlier in the night"[45] - prior to the alleged incident. Campana goes on to suggest, however, that "it was not until they [the stevedore crew] took a break and came back that he had a problem" (Ex. 1, p. 8), thus implying that the dolly/stanchions must have been positioned neared the platform/stair sometime during or after this alleged "break" (such that Plaintiff would not have had an opportunity to see it before the alleged incident). **This is not accurate**. Plaintiff explicitly testified that the Cooper stevedore crew *did not take their break* until after the alleged incident (approximately 11:20 PM/2320 hours) **after he had disembarked**:

> Q. [A]fter midnight, it looks like there was an hour lunch break from midnight until 1?
>
> A. I never called lunch break, so these numbers were already filled out before. He had already written in what time lunch was going to be.
>
> Q. My question is, were you off the ship before the crew broke for lunch?
>
> A. Correct.
>
> Q. On Exhibit 4 [Exhibit 7 to this Motion], though, it says the time you reported the incident was 12:30 a.m., which would have been during that lunch break, right?

---

[43] Ex. 5, OceanBelt_000218

[44] *Schehr*, 2019 WL 4752058 at *11.

[45] Ex. 4, p. 208 (ll. 2-4).

A. I did not call for lunch. I'm telling you that the flaggers write it down on the paperwork. When they want to go to lunch, they write it down and then we call one.

Q. So lunch did not happen from 12 to 1?

A. No, could have been a little after.

**Q. In any event, you were not still on the ship?**

**A. I was not on the ship when lunch started**.[46]

There is no other record evidence referring to any other "break," nor has Campana indicated the source for the "break" referred to in his report. Campana is wrong that the alleged incident happened after a "break" based on Plaintiff's unequivocal testimony; or he is again speculating without any basis in the record. Either way, his report/testimony are necessarily unhelpful, unreliable and inadmissible.

**(6)** Campana comments on whether Defendants complied with their Safety Management System ("SMS") (Ex. 1, p. 8), **but he admits he has not reviewed the vessel's SMS**. Any commentary regarding the vessel's SMS is therefore necessarily speculation and inadmissible.

Campana's report/opinions are based on abjectly wrong or rankly speculative assumptions and must be excluded under entrenched Fifth Circuit Rule 702 and *Daubert/Kumho* principles.

**2. Campana's References the Legally Irrelevant ISM Code**

Also, Campana's references to the ISM Code in this §905(b)/*Scindia* vessel negligence case[47] are legally irrelevant, necessarily unreliable and unhelpful to the finder of fact, and plainly prejudicial and misleading because they would have the jury consider legally erroneous standards. American courts have resoundingly held that the ISM Code *does not apply* to §905(b) claims:

> Few courts have addressed whether the ISM Code, as codified, creates duties running from vessels to longshoremen in excess of those set out in the LHWCA. **Nevertheless, every federal court that has addressed this issue has concluded that it does not**. *See, e.g., See Horton v. Maersk Line, Ltd.*, 603 Fed. Appx. 791,

---

[46] Ex. 4, pp. 231 (ll. 16-25) through 232 (ll. 1-13).

[47] *See* Rec. Doc. 25 (granting Defendants' motion to dismiss Plaintiff's unseaworthiness, general maritime law, and Louisiana state-law claims, leaving only the LHWCA 33 U.S.C. §905(b)/*Scindia* claims).

> 797 (11th Cir.2015) (rejecting…ISM Code as a basis for a negligence claim in excess of…LHWCA[/]*Scindia*, and citing supportive cases); *Aronson v. Celebrity Cruises, Inc.*, 30 F. Supp. 3d 1379, 1396 (S.D. Fla. 2014) ("[T]he [ISM Code does not create any duties and thus cannot be the basis for a negligence claim against a cruise line."); *Rinker v. Carnival Corp.*, 753 F. Supp.2d 1237, 1243 (S.D. Fla. 2010) ("Plaintiff has failed to present any authority that establishes that the [Code] creates any duties that Carnival owes to Plaintiff."); *Calderon v. Offen*, 2009 WL 3429771, at *4 (S.D. Fla. Oct. 20, 2009) ("Congress merely desired to participate with other maritime nations in achieving safety goals [viz. ISM Code], but did not intend to change long-established rules of law which govern liability and its allocation in general maritime law."); *Johnson v. Horizon Lines, LLC*, 520 F. Supp. 2d 524, 533 (S.D.N.Y.2007) ([]regulations implemented under the ISM Code…should not be construed as imposing additional duties). Because Plaintiff has not cited any specific portion of the ISM Code that provides support for the duty he alleges, nor any precedent that recognizes the ISM Code as a basis for a negligence claim, this Court joins the weight of authority [and holds] the ISM Code provides him with no relief.[48]

Thus, Campana's report and testimony are inadmissible to the extent they reference/rely on the ISM Code, *which does not apply* in this §905(b)/*Scindia* case.[49] Indeed, the Eleventh Circuit in *Horton* **specifically rejected** the same type of argument Campana's opinion attempts to make – i.e. that the vessel's crew were "improperly trained and supervised" with respect to their "duty to make rounds" and "monitor the stevedoring operations" (Ex. 1, p. 8):

> Plaintiff states [the ISM Code] requires the ship's officers to supervise and ensure safe cargo loading... [to argue that the vessel owner] had a duty to supervise the cargo operations and that there is a clear question of fact as to whether... [Plaintiff's] injuries were proximately caused by [the owner's] failure to supervise….Plaintiff has not cited any specific United States statute or regulation that provides a private right of action for the breach of the duty he alleges, nor any judicial precedent that recognizes the [ISM] Code as a basis for a negligence claim[.] [W]e reject Plaintiff's argument…and hold that [only the §905(b)/*Scindia* duties apply].[50]

### 3. Campana's Report/Opinions must be Excluded because they Merely address Common-Sense Issues within the Understanding of any Lay Juror

Campana's report/testimony are also inadmissible because they are not helpful to the jury

[48] *Jones v. Sanko Steamship Co., Ltd*, 148 F. Supp. 3d 374, 392 (D.N.J. 2015). *Accord Provence v. U.S.,* 661 F. Supp. 3d 459, 465 FN 3 (D.S.C. 2023) (collecting cases).

[49] *See Daubert,* 509 U.S. at 591 ("Expert testimony [unrelated] to any issue in the case is not relevant[/]non-helpful.").

[50] *Horton*, 603 Fed. Appx. at 796-97.

given the straightforward, common-sense mechanics of the alleged incident in this case. "There is no more certain test for determining when experts may be used than the common sense inquiry whether the untrained layman would be qualified to determine intelligently and to the best possible degree the particular issue without enlightenment from those having a specialized understanding of the subject involved in the dispute."[51] Here, "the jury [can] adeptly assess [the] situation using only their common experience and knowledge."[52] Nothing in Campana's proffered report/ opinions can help the jury assess how and why the alleged incident occurred because they "offer nothing beyond common-sense conclusions regarding this rather basic personal injury case."[53]

Plaintiff describes the relatively simple mechanics of his alleged incident: "I went to step over the steps and I slipped on a handrail pipe [sticking over the steps] on a dolly. It spun out from under my feet, and whatever I grabbed, it jammed everything up and I twisted my back."[54] Campana's incident summary (Ex. 1, p. 3) further confirms its basic, non-technical mechanics:

> [Plaintiff] had to cross over the vessel's deck piping by stepping on the cross over steps/platform along the portside between Holds 5 and 6 to access the outboard side of the vessel. As he did so, someone had placed a four (4) wheel portable dolly just forward of the step/platform which had aluminum stanchions on the dolly and some of these stanchions overlaid the inboard step. When he went to place his foot on the step, his foot landed on the stanchions resulting in him slipping and injuring himself.

This Court has routinely recognized that when "[t]here is nothing uniquely technical about the task at issue" – i.e. mounting a step with a nearby 3-4' tall dolly with pipes on it - "that requires

---

[51] Fed. R. Evid. 702 advisory committee note.

[52] *Peters v. Five Star Marine Service*, 898 F.2d 448, 450 (5th Cir.1990). Defendants have proffered their own marine surveyor expert, who actually *attended in person on the OCEAN BELT vessel*, to take measurements and photographs/imagery of the alleged conditions asserted in Plaintiff's claims (which, notably, Campana purports to rely on *because he never actually boarded the vessel*). Unlike Campana, Defendants' marine surveyor expert's testimony/opinions are directly reliable, helpful, and relevant in providing specific measurements and contextual analysis of the conditions at issue.

[53] *Jumonville v. Progressive Sec. Ins. Co.*, 2024 WL 3044653, at *2 (E.D. La. June 18, 2024) (Milazzo, J.) (excluding report/testimony of Campana as a proffered "marine safety expert"

[54] Ex. 4. p. 207, 213.

the assistance of an expert to understand…[a proffered expert] offers nothing that would assist the trier of fact."[55] This Court has applied this same principle in trip/slip cases involving supposed vessel deck hazards: "[When an expert's] sole opinion is that the exposed D-ring created a tripping hazard[,] [t]his opinion does not relate to any specialized maritime activity or equipment for which expert testimony would be required[; and] [t]he average juror is certainly familiar with tripping hazards and can resolve the issues presented in this case without expert testimony."[56]

Likewise, courts in this District have routinely excluded expert testimony – even in bench tried matters where Rule 70/*Daubert/Kumho* considerations are less acute – in cases arising from everyday incidents involving obstructed walkways, tripping hazards, and stair slip/trips:

> [Expert's] report states three conclusions about [the] accident: (1) the direct cause… was the failure of the captains and crew of the [vessel] to remove slipping hazards from the designated walkway; (2) a contributing cause…was the failure of the captain and crew to maintain the safety of the designated walkway by warning the crew of the potential danger of slipping items left in the hallway; and (3) a contributing cause… was the failure of the captain and crew not to store slipping hazards next to a designated walkway, or move the storage box to another area. [The expert] bases these conclusions on [plaintiff's] contention that he slipped on a welding rod… The Court finds that testimony of this sort would intrude upon the domain of common-sense matters for which…no expert assistance.[57]
>
> ***
>
> [Expert] seeks to testify regarding issues within the common knowledge, experience, and understanding of the average lay juror. No expertise is required to determine whether the lack of non-slip paint "increase[s] the chances of a slip or twisting of the knee," given that such testimony does not involve any scientific or technical procedures that are unknown to the jury.[58]
>
> ***
>
> [Expert addressed] whether it was unreasonably dangerous for safety glasses to be present on the stairs and if so, whether the defendant is responsible for the resulting

[55] *Gulf Coast Tugs, Inc.*, 668 F. Supp. 3d at 494 ("Lifting an ice chest – and a person's capability to lift it – are routine, ordinary occurrences that are within the realm of an average juror's common sense, understanding, and experience, not requiring either expert testimony or a job safety analysis.").

[56] *Sanders v. Weeks Marine, Inc.*, 2024 WL 4346515, at *6 (E.D. La. Sept. 30, 2024) (Ashe, J.)\.

[57] *Marshall v. Supreme Offshore Servs., Inc.*, 2011 WL 6258487, *2 (E.D. La. Dec. 15, 2011) (Vance, J.) (bench trial).

[58] *Lee v. Offshore Logistical & Transp., LLC,* 2017 WL 6501151, *4 (E.D. La. Dec. 19, 2017) (Morgan, J.).

> accident and injuries sustained[.] This Court…finds that an expert is not needed to resolve these issues. None of the opinions reached in the report require specialized knowledge.... This case involves Plaintiff's allegation that he slipped and fell while descending the stairs on Defendant's vessel. The facts of this case present no unusual or unique issues requiring specialized knowledge to understand.[59]
>
> ***
>
> [Plaintiff claims] the [vessel] entrance steps were not properly secured in position and that when he stepped onto them, they moved away from him, causing him to fall…It is apparent that what the factfinder must determine in terms of liability is whether or not the plaintiff actually fell and if so, what caused him to fall. If in fact the steps leading to the vessel moved when the plaintiff stepped on them, the factfinder must decide whether or not they were properly secured and if not, if the defendant acted reasonably in failing to secure them. A jury is competent to determine such liability issues and a "safety expert" would not assist the jury in making such a determination. Scientific, technical or specialized testimony would not assist the jury in reaching a decision on the vessel's liability in a routine "fall on a vessel" case such as this one and would offer little more than argument.[60]

Identically here, Campana's only purported opinions (*see* §I.B Schematic; Ex. 1, pp. 7-8) consist of concepts entirely within the common-sense, everyday understanding of lay jurors. The essence of Campana's proffered opinions is that the crew shouldn't have put a dolly near a step/platform (a rankly speculative assumption with no record support, *see* §II.C.1 *supra*) so as to create a walkway hazard (Ex. 1, p. 7 Item 7));[61] the alleged incident could have been avoided "had

---

[59] *Sanders v. Offshore Specialty Fabricators, LLC*, 2016 WL 6403226, *1 (E.D. La. Oct. 28, 2016)

[60] *Matherne v. MISR Shipping Co*., 1991 WL 99426, *1 (E.D. La. May 31, 1991) (Livaudais, J.).

[61] As discussed at §II.C.1 *supra*, there is no record evidence to support Campana's assumption that a vessel crew member positioned the dolly/stanchions where Plaintiff claims they were positioned prior to his **otherwise unwitnessed** alleged incident. Even if there were some dispute about how the dolly/stanchions ended up where they were, that dispute would not require expert testimony:

> [E]ven in the context of a bench trial, the Court sees no reason [an expert] should be allowed to offer an 'expert opinion' that the [vessel's] officers failed to clean the deck or have it cleaned prior to the accident. If [plaintiff] proves that the deck was in fact covered in urea (a fact that does not presently seem to be disputed), then he will have proved the substance of [the expert's] opinion.
>
> And even if [the vessel owner] seeks to prove that the [vessel's] crew in fact cleaned the deck prior to the accident, the Court sees no way [the expert's] expertise can aid in its resolution of the issue. Either the deck was covered in urea or it was not. If it was, the [vessel's] crew either cleaned it before it was re-coated or they did not. These are simple factual questions. The Court [as fact finder] knows its limitations, but it is confident it can "adeptly assess [the] situation using only [its] common experience and knowledge."

the vessel followed [unspecified] safety guidelines" (*id.,* p. 8 third bullet); and that "[a] rolling dolly should never be left on deck unsecured" (*id.* p. 8, fifth bullet). These are non-technical, simple concepts that any lay juror will be able to comprehend on his/her own.

Also, to the extent Campana comments/opines on whether Defendants complied with their own safety procedures/SMS (***which he admittedly has never seen***),[62] this is inadmissible: "a jury does not need the assistance of an expert in understanding an employer's own safety policies."[63]

**4. Campana's Report/Opinions do not Derive from Any Discernible Methodology**

There is a final holistic basis to exclude Campana's report/testimony under Rule 702/ *Daubert*/*Kumho*: Campana has not applied any discernible methodology. When an expert's "report lacks any discernable methodology or principle… [and his] opinions are [not] the product of any reliable and testable methodology," they must be excluded; and "[w]hile an expert may be able to rely on their own experiences in formulating an opinion, Rule 702 demands that expert opinions be the product of reliable and testable methodologies."[64] An expert cannot merely tout

---

*Gusman v. Archer Shipping, Ltd*., 2021 WL 3486750, *3 (E.D. La. Aug. 9, 2021) (Africk, J.). Identically here, whether the dolly/stanchion was next to the step/platform or not, and how it may have gotten there (for which *there is no record evidence*), cannot be determined by any "expert opinion."

[62] To the extent Campana suggests that a "Vessel Incident Report or Corrective Action report [w]as required by the ISM" (Ex. 1, p.8), any such opinion is invalid and inadmissible under this Court's precedent: "[Opinions/ testimony]that [a defendant] did not adequately investigate the incident, are impermissible because they are irrelevant to the facts at issue (including, for example, an explanation of how the [incident] happened)." *Matter of Tara Crosby, LLC*, 603 F. Supp. 3d 305, 309 (E.D. La. 2022) (Ashe, J.). *See also Douglas*, 431 F. Supp. 3d at 839. ("[S]ubsequent investigation has no bearing on the conditions [on the vessel] at the time of the incident."). Regardless, any opinion by Campana on this topic is necessarily speculative and unhelpful/unreliable because there is no evidence that the alleged incident was ever reported to the vessel/vessel crew.

[63] *Douglas,* 431 F. Supp. 3d at 838 (citing *Oatis v. Diamond Offshore Mgmt. Co*., 2010 WL 936449, *2 (E.D. La. Mar. 12, 2010) ("[T]he jury is capable of understanding [a company's] job safety policies and whether the policies were violated.") (Engelhardt, J.). Further, while Campana's report does not state or indicate that Defendants violated any regulatory requirements (including the *inapplicable* ISM Code provisions, *see* §II.C.2 *supra*), any purported testimony to this effect **would also be inadmissible**: "[T]he Court excludes those portions of Campana's listed opinions that make impermissible legal conclusions [regarding alleged regulatory violations]." *Badeaux v. Eymard Bros. Towing Co*., *Inc*., 2021 WL 4860300, *5 (E.D. La. Oct. 19, 2021).

[64] *Otkins v. Gilboy*, 2024 WL 1120204, at *4 (E.D. La. Mar. 14, 2024) (Vitter, J.).

his "experience and knowledge alone [as] all that he needs [for his] opinions to be admissible[;] [t]hat is not the law[;] experience and expertise alone are insufficient to satisfy…Rule 702."[65]

To begin with, Campana's own description of his "methodology" (Ex. 1, p. 4) essentially confirms the lack of any Rule 702/*Daubert/Kumho*-compliant methodology. He states only that: (a) he "reviewed the [**unspecified]** pertinent International and US Laws," including (apparently) the *inapplicable* ISM Code (*see* §II.C.2 *supra*) and without any detail of what "Laws" he supposedly considered; (b) that he has "not personally inspected the MV ***Ocean Belt***," but notes prior experience aboard other bulk cargo vessels; (c) and that he relies on his "experience on ships…in the field of marine surveying, independent investigation [**despite his admission he has never boarded this vessel]** … and consultation with [**unspecified**] consultation with appropriate publications and governmental agencies." His report then goes on to essentially summarize various facts (many of which are demonstrably wrong or patently speculative, *see* §II.C.1 *supra*), block-quote testimony, and reference (without actually contextualizing/analyzing) supposed safety/regulatory concepts (including the *inapplicable* ISM Code, *see* §II.C.2 *supra*).

**This is precisely the type of non-methodological, inadmissible expert evidence** this District has consistently rejected under Rule 702/*Daubert/Kumho*:

> [The expert] provides practically no methodology for his opinions regarding the crew's inadequate safety training. While "[o]ne would expect that [an] expert would have set forth how [the members of the crew] were trained and then discuss how that deviated from industry training standards," [the expert's] report simply offers his conclusory opinion that company personnel, vessel operators, and crew members were "improperly trained" and were therefore negligent. A court must make an assessment of whether the reasoning or methodology underlying an expert's testimony is valid before permitting his testimony. *Wells v. SmithKline Beecham Corp.*, 601 F.3d 375, 378 (5th Cir. 2010). An expert may not simply restate certain evidence and then offer an expert opinion "without any insight into the expert's own analysis or bases for his opinion." *RSUI Indem. Co. v. Am. States Ins. Co.*, 2015 WL 2372313, at *6 (E.D. La. May 18, 2015) (Africk, J.).

[65] *Id.*

> [The expert's] report is devoid of reasoning that supports his opinions regarding the crew's training and the Court is consequently unable conclude that [his] opinions are reliable… [and thus they] are excluded as proper reasoning and methodology supporting [those] opinions are absent.[66]
>
> ***
>
> The "Bases and Reasons for the Opinions" section of [the expert's] report in fact provides no bases or reasons for his opinions…He does not provide any explanation of the investigation he performed, the specific sources of information he relied on, or what methodology he employed to reach his conclusions. It is well settled that expert reports that are "nothing more than bare conclusions" are inadmissible because they offer no value to the trier of fact. *Slaugther v. Southern Talc Co.*, 919 F.2d 304, 307 (5th Cir. 1990). Courts thus routinely exclude expert testimony where the expert "offers little more than personal assurances based on his [professional] experience that his conclusions are so" on the grounds that such opinions have "insufficient factual support and lack [] reliable methodology." *Hathaway v. Bazany*, 507 F.3d 312, 318 (5th Cir. 2007)…Without more than credentials and a subjective opinion, an expert's testimony that 'it is so' is not admissible.[67]
>
> ***
>
> [The expert] report consists of conclusions and one-sided recitations of disputed factual issues relating to the presence of oil on the ladder, the condition of the anti-slip material, and the ship's cleanup procedures. **No expertise of any kind was required or used to render these opinions.**[68]
>
> ***
>
> Plaintiff's expert report…perfectly fits this description of the unhelpful expert report. [The] "expert" opinion is that the ship's captain failed to provide plaintiff with a clean, safe workplace and that this violated [the vessel owner's] Safety Manual and federal regulations. There is simply no expertise required for the opinions [the expert] offers.[69]

Campana's report fits the same paradigm of the non-methodological, non-admissible expert evidence exemplified in the above jurisprudence. Moreover, to the extent Campana generically relies on his years of experience on vessels in his report, he does not tie any of his purported opinions to that experience. This is insufficient: "To the extent [an expert] purports to rely on his

---

[66] *Shawler v. Ergon Asphalt & Emulsions, Inc.*, 2016 WL 1019121, at *12 (E.D. La. Mar. 15, 2016), *aff'd sub nom. Shawler v. Big Valley, L.L.C.,* 728 F. App'x 391 (5th Cir. 2018).

[67] *U.S. All. Grp., Inc. v. Cardtronics USA, Inc.*, 645 F. Supp. 3d 554, 561 (E.D. La. 2022) (Vance, J.).

[68] *Jones v. H.W.C. Ltd.*, 2003 WL 42146, at *3 (E.D. La. Jan. 3, 2003).

[69] *Bouton v. Kim Susan, Inc.*, 1997 WL 61450, at *2 (E.D. La. Feb. 6, 1997).

'experience [or] training,' [his testimony is inadmissible if] he does not link his conclusion to any particular aspect of his experience or training … [because such] testimony is not based on 'reliable principles and methods.'"[70] In essence, Campana's report "simply recites…[Plaintiff's] version of the facts" – or rather a version that includes several of Campana's own errors and speculations – "[but] [h]e does not provide any explanation of the investigation he performed [which was **none because he did not attend the joint survey**], the specific sources of information he relied on, or what methodology he employed to reach his conclusions."[71] In essence, Campana's report/ testimony are exactly like those "[c]ourts… routinely exclude… where the expert offers little more than personal assurances based on his [professional] experience that his conclusions are so on the grounds that such opinions have insufficient factual support and lack [] reliable methodology."[72]

## III. CONCLUSION

Campana relies on numerous objectively incorrect and speculative/unsupported facts; references the inapplicable ISM Code; improperly overcomplicates an otherwise straightforward, non-technical alleged incident within the common sense of any lay juror; and does not apply any valid methodology. Campana's report/testimony must be excluded under this Court and the Fifth Circuit's Rule 702/*Daubert/ Kumho* precedents; or alternatively under Rule 403, because any probative value of his proffered "marine expert" evidence "is substantially outweighed by a danger of [*inter alia*] unfair prejudice, confusing the issues, [and] misleading the jury."

Respectfully submitted,

**BAKER DONELSON BEARMAN CALDWELL & BERKOWITZ, PC**

BY: /s/ *Christopher M. Hannan*
Christopher M. Hannan (Bar No. 31765) (TA)
Dawei Zhang (Bar No. 20037)

---

[70] *Badeaux v. Eymard Bros. Towing Co., Inc.*, 2021 WL 4860300, at *3 (E.D. La. Oct. 19, 2021).

[71] *U.S. All. Grp., Inc. v. Cardtronics USA, Inc.*, 645 F. Supp. 3d 554, 561 (E.D. La. 2022) (Vance, J.).

[72] *Id.*

Lauren E. Burk (Bar No. 34470)
201 St. Charles Avenue, Suite 3600
New Orleans, Louisiana 70170
Telephone: (504) 566-5200
Facsimile: (504) 636-4000
Email: channan@bakerdonelson.com
dzhang@bakerdonelson.com
lburk@bakerdonelson.com

**ATTORNEYS FOR DEFENDANTS OCEAN BELT MARITIME, INC. AND OCEAN LONGEVITY SHIPPING & MANAGEMENT CO., LTD.**