UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA


JOSEPH TRIGLETH                                    CIVIL ACTION

VERSUS                                             NO. 23-65

OCEAN BELT MARITIME, INC., *et al*.                SECTION M (4)


## <u>ORDER & REASONS</u>

Before the Court is a motion by plaintiff Joseph Trigleth seeking reconsideration of this Court's September 4, 2025 Order & Reasons granting defendant's motion *in limine* and excluding from trial any evidence of causation offered by Trigleth's treating physicians, because Trigleth failed to comply with Rule 26(a)(2)(C) of the Federal Rules of Civil Procedure.[1]  Defendants Ocean Belt Maritime, Inc. and Ocean Longevity Shipping & Management Co., Ltd. (together, "Defendants") respond in opposition,[2] and Trigleth replies in further support of his motion.[3] Having considered the parties' memoranda, the record, and the applicable law, the Court issues this Order & Reasons denying the motion.

## I.    BACKGROUND

This personal-injury suit arises out of an incident on the Defendants' vessel, the M/V *Ocean Belt* (the "Vessel").  On January 29, 2021, Trigleth was overseeing cargo operations on the Vessel in his capacity as a ship superintendent employed by non-party Cooper Consolidated, LLC.[4] His duties required him to traverse the deck, including a platform crossing over the Vessel's

---

[1] R. Doc. 74 (citing R. Doc. 73).
[2] R. Doc. 76.
[3] R. Doc. 78.
[4] R. Docs. 20 at 2; 38-3 at 1.

piping.[5]  Trigleth alleges that, while descending the steps from the crossover platform, he tripped and fell on a dolly loaded with safety pipes positioned near the bottom of the stairs such that the pipes protruded onto the step, causing him serious injury.[6]  On January 6, 2023, Trigleth brought this action under this Court's diversity jurisdiction pursuant to 28 U.S.C. § 1332 and, alternatively, under the Court's admiralty jurisdiction pursuant to 28 U.S.C. § 1333, asserting negligence and unseaworthiness claims under the general maritime law, Louisiana law, and § 905 of the Longshore and Harbor Workers' Compensation Act ("LHWCA"), 33 U.S.C. §§ 901-950.[7]  On January 20, 2023, Trigleth amended his complaint, removing the alternative assertion of admiralty jurisdiction and adding a jury demand.[8]  On December 6, 2023, in response to Defendants' motion to dismiss his § 905(b) claim,[9] Trigleth amended his complaint a second time, retaining the assertion of diversity jurisdiction and jury demand.[10]  On January 30, 2024, the Court dismissed Trigleth's unseaworthiness, general-maritime-law, and state-law claims with prejudice.[11]  Trigleth's only remaining claim is his § 905(b) vessel-negligence claim.

The relevant scheduling order that was issued on October 30, 2024, set February 3, 2025, as Trigleth's deadline for providing to Defendants his expert disclosures with respect to all experts as defined by Rules 26(a)(2)(B) and (C) of the Federal Rules of Civil Procedure.[12]  On February 5, 2025, Trigleth sent Defendants his expert disclosures which listed three retained experts and attached their reports: (1) G. Randolph Rice, Ph.D. (economist); (2) Ashley G. Lastrapes, Ph.D., CRC, CCM, CLCP, LPC-S, LRC (vocational rehabilitation and lifecare planning); and (3) Captain

---

[5] R. Doc. 20 at 2.
[6] *Id.* at 2-3.
[7] R. Doc. 1 at 1-3.
[8] R. Doc. 4 at 1, 4.
[9] R. Doc. 14.
[10] R. Doc. 20 at 1, 5.  The resulting complaint is the operative complaint.
[11] R. Doc. 25.  Trigleth did not oppose the Defendants' motion to dismiss his unseaworthiness, general-maritime-law, and state-law claims.  *See* R. Doc. 24.
[12] R. Doc. 32 at 2.

Ronald L. Campana (marine safety).[13]  Trigleth also listed six treating physicians, including Dr. Ashraf F. Guirgues and Dr. Garlon L. Campbell, Jr., and globally described their anticipated testimony as follows:

> In addition, while not specially retained to provide expert testimony, plaintiff also discloses pursuant to FRCP(a)(2)(C) that he may also utilize the testimony of his treating physicians as experts in their fields of practice, to provide a hybrid of opinion and factual testimony, regarding their examination and treatment of the plaintiff, his diagnosis, prognosis, damages, and causation insofar as the accident described to them by the plaintiff was the cause of plaintiff's injuries and/or the cause of aggravation of any pre-existing conditions from which the plaintiff may have suffered, as well as plaintiff's ability to return to work and restrictions related thereto, based upon their examination and treatment of the plaintiff.  Reports and other records from these medical providers have been previously provided or are otherwise in possession of the opposing party and its counsel.[14]

Trigleth offered no other explanation of the treating physicians' purported opinions, nor did he point to specific parts of their reports and records that support their proffered opinions.

Defendants filed a motion *in limine*, arguing that Trigleth's expert disclosure with respect to his treating physicians failed to comply with Rule 26(a)(2)(C) because it did not mention future medical treatment or surgery and provided no facts or data to support any of the listed areas of anticipated testimony, particularly causation.[15]  To that end, Defendants sought to exclude from trial: (1) any testimony by Trigleth's treating physicians, Drs. Guirgues and Campbell, regarding potential future surgical recommendations and medical causation connecting Trigleth's alleged lumbar and cervical problems to the January 29, 2021 incident; (2) the aspects of the December 2, 2024 vocational analysis and lifecare plan prepared by Dr. Lastrapes, along with any testimony based on her report that address future lumbar fusion surgery, that rely in turn on the opinions of Drs. Guirgues and Campbell; (3) Dr. Lastrapes's opinions purportedly included in her "summary

---

[13] R. Doc. 57-2.
[14] *Id.* at 2-3.
[15] R. Doc. 57.

of conference" with Dr. Guirgues; and (4) those aspects of the December 2, 2024 economist report authored by Dr. Rice that rely on the improperly supported report of Dr. Lastrapes (which in turn relies on the inadequate disclosure of Dr. Guirgues) to address future lost wages relating to any future lumbar surgery and any related testimony based on his report.[16]

Trigleth opposed the motion, asserting that his Rule 26(a)(2)(C) disclosure with respect to his treating physicians was sufficient to put the Defendants on notice of the opinions that would be offered so as to allow Defendants to prepare cross-examination and hire their own countervailing experts.[17] Trigleth emphasized that he provided Dr. Lastrapes's report, along with the September 2024 summary of conference, to Defendants on December 9, 2024, *before* the February 2025 disclosure deadline.[18] And Trigleth related that Defendants' expert, Dr. Michael P. Zeringue, reviewed Dr. Lastrapes's report, including Dr. Guirgues's comments, to form his own opinions regarding Trigleth's likely future medical treatment.[19] Thus, said Trigleth, Defendants were made aware of Dr. Guirgues's surgical recommendation in a timely fashion and could not claim that Trigleth's failure to precisely follow Rule 26(a)(2)(C) resulted in prejudicial surprise.[20]

In ruling on the motion, this Court held that Trigleth's global disclosure with respect to the six treating physicians that generally referenced previously-provided reports and medical records failed to comply with Rule 26(a)(2)(C) because it failed to state that any particular doctor would opine about future surgeries or other medical care, nor did the disclosure summarize the facts and opinions that any treating physician was expected to render as to future medical care or causation.[21] However, the Court also held that Trigleth's failure to comply with Rule 26(a)(2)(C) was harmless

---

[16] R. Doc. 57-1 at 1-2.
[17] R. Doc. 65.
[18] *Id.* at 6.
[19] *Id.* at 10.
[20] *Id.* at 6-11.
[21] R. Doc. 73 at 7.

as to Dr. Guirgues's opinions on future medical treatment because Trigleth attached to the disclosure the September 2024 conference-summary document, which had been adopted by Dr. Guirgues, that fully apprised Defendants of Dr. Guirgues's opinions on Trigleth's future medical needs based on his diagnosis.[22]  Moreover, Defendants were able to use the September 2024 conference summary in preparing their defense, including the preparation of their own medical expert's report.[23]  Accordingly, the Court denied the motion as to excluding from trial Dr. Guirgues's opinions on Trigleth's future medical treatment and any opinions rendered by Drs. Lastrapes and Rice that are derived from Dr. Guirgues's opinions.[24]  But the Court also noted that Trigleth did not identify a similar circumstance regarding the disclosure of the future medical treatment opinions of any other treating physician or the opinion of any physician (including Dr. Guirgues) on medical causation.[25]  Thus, the Court granted the motion as to excluding from trial: (1) any opinion of a treating physician, other than Dr. Guirgues, on Trigleth's future medical care; (2) any opinion of Drs. Lastrapes and Rice based on the opinions of treating physicians, other than Dr. Guirgues, about future medical care; and (3) any opinion of a treating physician on causation.[26]

## II.    PENDING MOTION

Trigleth seeks reconsideration of this Court's September 4, 2025 Order & Reasons with respect to the exclusion of causation testimony he seeks to offer from Dr. Guirgues, Dr. Mathew Mazoch, and Dr. Alan Schroeder, arguing that his failure to comply with Rule 26(a)(2)(C) was harmless.[27]  As to Dr. Guirgues, Trigleth contends that the doctor should be permitted to offer causation testimony because the September 2024 conference summary includes a statement that

---

[22] *Id.* at 8.
[23] *Id.*
[24] *Id.* at 8-9.
[25] *Id.*
[26] *Id.*
[27] R. Doc. 74.

"[a]s a treating physician of Mr. Trigleth and based on [Dr. Guirgues's] education, training, experience, and the medical history [he] ha[s] been provided, it is [his] opinion that Mr. Trigleth's injuries and the medical treatment that [he] ha[s] provided to date, are more probably than not a result of the incident that occurred on 01/29/2021."[28]  With respect to Drs. Mazoch and Schroeder, Trigleth argues that their causation opinions are supported by the medical records that were provided to Defendants before the Rule 26 disclosure and Defendant's medical expert was able to find those opinions and use them in preparing his expert report.[29]  Thus, says Trigleth, his failure to comply with Rule 26(a)(2)(C) in disclosing his treating physicians' causation opinions is harmless.[30]

Defendants respond with different arguments as to each of the three physicians.[31] Defendants do not object to causation testimony from Dr. Mazoch provided that "it is (1) *limited* in his capacity as a treating physician, (2) *with limited respect* to [Trigleth's] alleged *right* shoulder injuries, and (3) *only insofar* as Dr. Mazoch's treating medical records address causation with respect to *right shoulder* injuries."[32]  However, Defendants object to Dr. Mazoch offering any causation testimony as to Trigleth's *left* shoulder injury as speculative because Dr. Mazoch admitted that it is difficult to determine if that injury was related to the subject accident.[33] Defendants also object to Dr. Mazoch offering any causation testimony on Trigleth's alleged lumbar and other spinal pathologies because he never assessed or treated Trigleth for such issues and did not provide a proper expert report.[34]  As for Dr. Schroeder, Defendants argue that he was never a treating physician of Trigleth, but rather examined Trigleth and issued a report for workers'

---

[28] R. Doc. 74-1 at 3.
[29] *Id.* at 4-7.
[30] *Id.*
[31] R. Doc. 76.
[32] *Id.* at 1 (emphasis in original).
[33] *Id.* at 2.
[34] *Id.*

compensation purposes; he did not provide a Rule 26 retained expert report in this litigation; and he has never assessed or admissibly opined regarding causation of Trigleth's lumbar and other spinal pathologies.[35]  Thus, say Defendants, because Dr. Schroeder is not a treating physician, he cannot testify under Trigleth's Rule 26(a)(2)(C) disclosure.[36]  Moreover, Defendants aver that Dr. Schroeder did not competently assess medical causation as to any of Trigleth's alleged spinal pathologies.[37]  Finally, in regard to Dr. Guirgues, Defendants contend that he cannot offer medical causation evidence because the September 2024 conference summary is "non-derivative of, and extraneous to, Dr. Guirgues's actual medical records," which do not include "any opinion or analysis regarding whether any spinal pathologies were causally related to the underlying incident in this case …, much less on a more-probable-than-not basis."[38]  Defendants also point out that the September 2024 conference summary does not include any facts supporting a causation opinion from Dr. Guirgues.[39]

Trigleth replies, arguing, on the one hand, that Dr. Schroeder should be permitted to render causation testimony because, although he is not a treating physician, he has provided two detailed reports setting forth his opinions and the facts upon which they are based, meaning that Defendants would not be prejudiced by his testimony.[40]  On the other hand, Trigleth urges that Dr. Schroeder should be considered a treating physician because Trigleth's appointment with Dr. Schroeder was not scheduled by Trigleth's attorney, but rather the workers' compensation carrier, and Dr. Schroeder practices in the same office as Dr. Mazoch, who is Trigleth's treating physician.[41]  But, says Trigleth, if Dr. Schroeder is not considered a treating physician, the reports that were produced

---

[35] *Id.* at 2-4.
[36] *Id.* at 3.
[37] *Id.* at 4.
[38] *Id.* at 4-8 (quotes at 5).
[39] *Id.* at 5-8.
[40] R. Doc. 78 at 1-6.
[41] *Id.* at 3.

to Defendants satisfy Rule 26(a)(2)(B).[42]  Further, Trigleth asserts that any failure to comply with Rule 26 should be deemed harmless because he will be highly prejudiced should he not be permitted to present causation testimony.[43]  As for Dr. Guirgues, Trigleth contends that the September 2024 conference summary contains a causation opinion, and to the extent that it is deemed insufficient, his failure to comply with Rule 26 should be deemed harmless because Defendants are not prejudiced by any deficiency in the disclosure, whereas he would be highly prejudiced by the exclusion of causation testimony.[44]

## II.    ANALYSIS

### A.  Rule 54(b) Standard

Under Rule 54(b), a "court is free to reconsider and reverse its decision for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law." *Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 336 (5th Cir. 2017) (quotation omitted).  Rule 54(b) "'reflect[s] the inherent power of the rendering district court to afford such relief from interlocutory judgments as justice requires.'"  *Id.* at 337 (internal quotation marks omitted) (quoting *Cobell v. Jewell*, 802 F.3d 12, 25 (D.C. Cir. 2015)).  However, the district court must exercise this broad discretion sparingly to forestall the perpetual reexamination of orders and the resulting burdens and delays.  *See Calpecto 1981 v. Marshall Expl., Inc.*, 989 F.2d 1408, 1415 (5th Cir. 1993) (observing that if "the district court was required to reconsider [an interlocutory order] simply because [the losing party] belatedly came forward with evidence not submitted prior to the ruling[,] ... the cycle of reconsideration would be never-ending"); *Domain Prot., LLC v. Sea Wasp, LLC*, 2019 WL 3933614, at *5 (E.D. Tex. Aug. 20, 2019) (observing that, "although a

---

[42] *Id.* at 4-5.
[43] *Id.* at 5-6.
[44] *Id.* at 7-9.

district court may revisit an interlocutory order on any ground it sees fit, it may also use its discretion to prevent parties from, without justification, raising new arguments for the first time") (emphasis, alteration, and quotation omitted); 18B CHARLES A. WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 4478.1, at 659 (3d ed. 2019) ("A trial court could not operate if it were to yield to every request to reconsider each of the multitude of rulings that may be made between filing and final judgment.").

### B. Rule 26(a)(2)(C) and Rule 37(c)(2) Standards

Rule 26(a)(2) of the Federal Rules of Civil Procedure governs the disclosure of expert testimony. An expert that is retained by a party for purposes of litigation is required to provide an expert report pursuant to Rule 26(a)(2)(B). Prior to 2010, non-retained experts, such as treating physicians, were exempt from Rule 26's expert reporting requirements. *See Tucker v. United States*, 2019 WL 4198254, at *2 (E.D. La. Sept. 4, 2019). In 2010, Rule 26(a)(2)(C) was added, which provides a modified disclosure requirement applicable to non-retained experts, such as treating physicians. *Id.* Rule 26(a)(2)(C) requires that a party, with respect to a non-retained expert, provide a written disclosure, in lieu of a report, stating: "(i) the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705; and (ii) a summary of the facts and opinions to which the witness is expected to testify."

A Rule 26(a)(2)(C) disclosure "need not be extensive," but must include "an abstract, abridgement, or compendium of the opinion *and* facts supporting the opinion." *Causey v. State Farm Mut. Auto. Ins. Co.*, 2018 WL 2234749, at *2 (E.D. La. May 16, 2018) (quotation omitted; emphasis in original). Although "the rule does not require overly comprehensive disclosure … it does require disclosure in at least *some* form" in order "to provide opposing parties the opportunity to prepare for effective cross-examination and to arrange for testimony from other experts, if

necessary." *Id.* (emphasis in original); *see also Collett v. Weyerhaeuser Co.*, 512 F. Supp. 3d 665, 672 (E.D. La. 2021) ("In lieu of a report, the treating physician's records, summaries of the treatment, or a letter or summary report is produced containing information sufficient to allow opposing counsel to understand the scope of the expected testimony and supplement the information with a pretrial deposition."), *aff'd*, 2022 WL 2387352 (5th Cir. July 1, 2022).

Rule 37(c)(1) states that, "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) …, the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Further, this Court's scheduling order states that "[t]he Court will not permit any witness, expert or fact, to testify or any exhibits to be used unless there has been compliance with this Order as it pertains to the witness and/or exhibits, without an order to do so issued on motion for good cause shown."[45] The Fifth Circuit has outlined a four-factor standard to determine whether the failure to meet Rule 26 disclosure requirements was substantially justified or is harmless. *Williams v. Louisiana*, 2015 WL 5438596, at *5 (M.D. La. Sept. 11, 2015) (citing *Sierra Club, Lone Star Chapter v. Cedar Point Oil Co.*, 73 F.3d 546, 572 (5th Cir. 1996)). "To avoid abusing their discretion, courts must: (1) examine the importance of the witness's testimony; (2) consider the prejudice, if any, to the opposing party of allowing the witness to testify; (3) decide whether there is a possibility of curing such prejudice by granting a continuance; and (4) consider the explanation, if any, for the party's failure to comply with the discovery requirements." *Id.* (citing *Sierra Club*, 73 F.3d at 572).

---

[45] R. Doc. 32 at 3.

10

### C.  Analysis

This Court previously held that Trigleth failed to comply with Rule 26(a)(2)(C) with respect to the causation opinions of his treating physicians and that he did not show that the failure was harmless.[46]  In his motion to reconsider, Trigleth attempts, but fails, to demonstrate that his noncompliance was harmless.   While the September 2024 conference summary includes a statement that Dr. Guirgues opines that the subject accident more probably than not caused Trigleth's injuries and medical treatment, that document lacks any description of the facts upon which such an opinion is based.[47]  The medical facts listed in the conference summary pertain only to future medical treatment.[48]  And the document states in conclusory fashion that Dr. Guirgues's opinion is based on his "education, training, experience, and the medical history [he] has been provided."[49]  This is insufficient to apprise Defendants of the facts upon which Dr. Guirgues's causation opinion is based.  It places the onus on Defendants to search the medical records for the facts that support Dr. Guirgues's causation opinion, which facts, say Defendants, are not present in the medical records.  Accordingly, Dr. Guirgues cannot offer causation opinions as an expert, although he can testify about any causation determination necessary to and made during the course of Trigleth's medical treatment, if contained in the medical records.  *See Rea v. Wis. Coach Lines, Inc.*, 2014 WL 4981803, at *5-6 (E.D. La. Oct. 3, 2014) (excluding treating physician's causation opinions that were not established by the medical records when plaintiff failed to comply with the disclosure requirements of Rule 26(a)(2)(C).

Dr. Schroeder cannot render causation opinions either.   Defendants point out that Dr. Schroeder was not Trigleth's treating physician and cannot testify under Trigleth's Rule

---

[46] R. Doc. 73 at 7-9.
[47] R. Doc. 74-2.
[48] *Id.*
[49] *Id.*

26(a)(2)(C) designation.  As such, for Dr. Schroeder to offer causation opinions, he would have had to produce a retained expert report in compliance with Rule 26(a)(2)(B), which he did not. Trigleth cannot at this late hour morph Dr. Schroeder's medical notes into Rule 26 expert reports. If he could, plaintiffs would be given a green light to ignore the retained expert report deadline only to say a non-treating doctor is a retained expert at the eleventh hour even though proper Rule 26 disclosures were not made.  This would force defendants to assume any doctor could become a retained expert by simply producing some sort of writing.

Finally, Dr. Mazoch may offer causation opinions as agreed by Defendants that are (1) limited to his capacity as a treating physician, (2) with limited respect to Trigleth's alleged right shoulder injuries, and (3) only insofar as Dr. Mazoch's treating medical records address causation with respect to right shoulder injuries.  However, Dr. Mazoch may not offer any causation testimony as to Trigleth's left shoulder injury or alleged spinal injuries because Trigleth's failure to comply with Rule 26(a)(2)(C) is not harmless.  Again, Trigleth attempts to place the onus on Defendants to search Dr. Mazoch's medical records for causation opinions.  Furthermore, to the Court's knowledge, Dr. Mazoch's records include just one line on causation with respect to Trigleth's shoulder injuries, which line is equivocal and void of facts as to the left shoulder, and the records say nothing at all as to the alleged spinal injuries.  "Providing medical records and expecting defendants to search for the opinions that may be contained therein does not satisfy Rule 26(a)(2)(C)."  *Matthews v. Amtrust Grp., Ins.*, 2020 WL 206186, at *2 (E.D. La. Jan. 14, 2020). Moreover, Trigleth's failure to comply is not rendered harmless simply because Defendants' expert found the needle in the haystack.  If it were, a double standard would result where a plaintiff's inadequate Rule 26(a)(2)(C) disclosure is found to be harmless when a defendant acts

with more diligence than did the plaintiff, but not harmless when a defendant is less attentive.  This rewards behaviors unsuited to productive litigation.

## III.    CONCLUSION

Accordingly, for the foregoing reasons,

IT IS ORDERED that Trigleth's motion for reconsideration (R. Doc. 74) is GRANTED as unopposed with respect to Dr. Mazoch offering causation opinions (1) limited to his capacity as a treating physician, (2) with limited respect to Trigleth's alleged right shoulder injuries, and (3) only insofar as Dr. Mazoch's treating medical records address causation with respect to right shoulder injuries.

IT IS FURTHER ORDERED that the motion is otherwise DENIED.

New Orleans, Louisiana, this 2nd day of October, 2025.

BARRY W. ASHE
UNITED STATES DISTRICT JUDGE